FILED

2005 Dec-02  PM 03:58
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| EMC PROPERTY and CASUALTY COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CIVIL ACTION NO. 05-HS-0162-S |
| | ) | |
| MIKE FONTAINE, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OF OPINION

This matter comes before the court on Plaintiff EMC's motion for summary judgment (doc. 19). EMC asserts that it is entitled to summary judgment in this matter as it does not owe a duty to defend or indemnify Mike Fontaine d/b/a Fontaine Construction Company, Inc., Michael Fontaine and Fontaine, Inc. (hereinafter "Fontaine") for the claims asserted against Fontaine in the underlying action.[1]  On June 16, 2005, prior to the filing of this motion for summary judgment, the court Ordered that all motions for summary judgment filed in this action, and all responses and replies thereto, must comply with the procedures and formatting requirements set

---

[1] The underlying action is pending in the Circuit Court of Jefferson County and is styled, *Linda Geiss v. Mike Fontaine d/b/a Fontaine Construction Company, Inc., Michael Fontaine and Fontaine, Inc., et al.,* docket number CV 01-2478 (hereinafter "the underlying action").

1

out in the court's Standing Order Establishing Pre-trial Procedure and Appendix II attached thereto.  Under the provisions of the Standing Order, Fontaine's and Geiss's responses to the present motion for summary judgment were due to be submitted to the court by July 7, 2005.  As of the date of this memorandum opinion, neither have responded or noticed the court with a reason for the lack of response to the pending motion.[2]

For the reasons stated, EMC's motion for summary judgment is due to be **GRANTED**.

## Facts

1.    Plaintiff  EMC Property and Casualty Company ("EMC") issued Commercial General Liability Policy Number 9D8 77 61–91 ("the Policy") to Fontaine, Inc d/b/a Fontaine Construction Co. for effective dates March 8, 1990 through March 8, 1991. (Exhibit 2).

2.    This claim arises out of a lawsuit filed on April 23, 2001 in the Circuit Court of Jefferson County, Alabama.  (Exhibit 1).

---

[2]"[T]he district court's order granting summary judgment must indicate that the merits of the motion were addressed."  *U.S. v. One Piece of Real Property Located at 5800 SW 74th Ave., Miami, Fla.*, 363 F.3d 1099, 1101 (11th Cir. 2004)(internal marks omitted).  It is impermissible to grant a motion for summary judgment based on a lack of response to the motion by the nonmoving party.  *Id.*  The court, as it must, ensured that the motion is supported by evidentiary materials, reviewed all of the evidentiary materials submitted in support of the motion, and decided the motion on the merits.

3.      The underlying lawsuit was brought by Linda Geiss against Mike Fontaine

d/b/a Fontaine Construction Co., Inc, Dryvit Systems, Inc[3], and Troy Dillard d/b/a

Dillard Plastering, Co.

4.      The claim is based upon the plaintiff's EIFS residence that was allegedly built

by Fontaine.

5.      On January 9, 2003, an amended complaint was filed in the underlying action

against Fontaine, Inc. and Mike Fontaine individually based upon the allegation that

Mike Fontaine and/or his company constructed Geiss's home. (Exhibit 1).

6.      The following is a time line regarding the relevant events in the underlying

action:

| | |
|---|---|
| April 20, 1990 | Linda Geiss purchased home |
| April 23, 2001 | Underlying lawsuit filed |
| May 14, 2001 | Service on Fontaine of underlying action |
| May 13, 2002 | Geiss filed application for default against Fontaine |
| May 24, 2002 | Default judgment entered against Fontaine (amount proven at trial) |
| January 9, 2003 | Amended complaint filed |
| January 17, 2003 | Service on Fontaine (amended complaint) |
| October 11, 2004 | Date on letter to EMC from Plaintiff's attorney enclosing complaint and amended complaint in underlying lawsuit. |
| October 14, 2004 | EMC's first notice of the claim |
| October 22, 2004 | Recorded statement from Mike Fontaine (transcription attached to EMC's Motion for |

_____

[3] On March 21, 2003, Dryvit Systems, Inc. was dismissed with prejudice.

3

Summary Judgment as Exhibit 4).

7.    In his recorded statement obtained by EMC on October 22, 2004, Mike

Fontaine stated the following:

. . .

| | |
|---|---|
| Ken Bernard: | Ok. All right and when you originally were made aware of this was was it when you were served with the copy of the lawsuit by the Sheriff or a Process Server? |
| Mike Fontaine: | Uh, it was actually sent to to me in the mail.  Was the first I was made aware of it. |
| Ken Bernard: | All right and you have no idea when that was? |
| Mike Fontaine: | I do not remember when it was. |
| Ken Bernard: | I mean has it been a months, years? |
| Mike Fontaine: | It has been up probably uh year or more. |
| Ken Bernard: | Ok. What did you do about it? |
| Mike Fontaine: | Well I really didn't do anything about it. |
| Ken Bernard: | You just ignored it? |
| Mike Fontaine: | That's correct. |
| Ken Bernard: | Um, may I ask why? |
| Mike Fontaine: | Well I just uh you know have had these dryvit things I actually had a couple more of 'em that I ignored and they just went away.  I never got nothing ever happened with them. |
| Ken Bernard: | All right. |
| Mike Fontaine: | So I just kinda hoping it would go away. |
| Ken Bernard: | Were they lawsuits? |
| Mike Fontaine: | I beg your pardon. |
| Ken Bernard: | Were any of them lawsuits? |
| Mike Fontaine: | Uh. |
| Ken Bernard: | Or just claims? |
| Mike Fontaine: | Just claims. |
| Ken Bernard: | Ok. This is the first lawsuit? |
| Mike Fontaine: | Yes. |
| Ken Bernard: | But you did receive it service from a Sheriff and |

4

|                |                                                                                                                                                                                                        |
|----------------|--------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
|                | ignored it?                                                                                                                                                                                            |
| Mike Fontaine: | Yes.                                                                                                                                                                                                   |
| Ken Bernard:   | All right well what prompted it to be recently you know for you to notify EMC?                                                                                                                         |
| Mike Fontaine: | Well it just decided it wasn't going to go away.                                                                                                                                                       |
| Ken Bernard:   | All right and uh uh anything that prompted that ? Did you have some kind of contact with the attorney or somebody?                                                                                     |
| Mike Fontaine: | uh, well actually Linda Geiss's up bird dogged me pretty well and she has called and come by here and uh when she actually started coming to my uh the place of business I guess I decided time to do something about it. |
|                | . . .                                                                                                                                                                                                  |
| Ken Bernard:   | Ok. Did you after receiving that initial um service of the lawsuit did you receive anything else further that was uh you know from the court?                                                          |
| Mike Fontaine: | Um, I don't remember if I did or not.                                                                                                                                                                  |
| Ken Bernard:   | Don't recall?                                                                                                                                                                                          |
| Mike Fontaine: | I think I received a uh um I received several correspondences over the past months but I don't remember.                                                                                               |
| Ken Bernard:   | Did you ignore all of those?                                                                                                                                                                           |
| Mike Fontaine: | (unable to understand) I must have ignored them, yes.                                                                                                                                                  |

(Exhibit 4).

## Standard of Review for Summary Judgment

Under Fed. R. Civ. P. 56(c), summary judgment is proper "if the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact and that

the moving party is entitled to judgment as a matter of law."  See *Celotex Corp. v.*

5

*Catrett*, 477 U.S. 317, 322 (1986); *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000).  The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact.  *Celotex*, 477 U.S. at 323.  Once the moving party has met its burden, Rule 56(e) requires the non-moving party to go beyond the pleadings and, by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial.  *Celotex*, 477 U.S. at 324.

The substantive law will identify which facts are material and which are irrelevant.  *Chapman*, 229 F.3d at 1023; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *Chapman*, 229 F.3d at 1023; *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248;  *Chapman*, 229 F.3d at 1023.  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Anderson*, 477 U.S. at 249.

The method used by the party moving for summary judgment to discharge its

initial burden depends on whether that party bears the burden of proof on the issue at trial.  See *Fitzpatrick*, 2 F.3d at 1115-17 (citing *U.S. v. Four Parcels of Real Property*, 941 F.2d 1428 (11th Cir. 1991)(*en banc*)).  If the moving party bears the burden of proof at trial, then it can only meet its initial burden on summary judgment by coming forward with positive evidence demonstrating the absence of a genuine issue of material fact; i.e. facts that would entitle it to a directed verdict if not controverted at trial.  *Fitzpatrick*, 2 F.3d at 1115.  Once the moving party makes such a showing, the burden shifts to the non-moving party to produce significant, probative evidence demonstrating a genuine issue for trial.

If the moving party does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways.  First, the moving party may produce affirmative evidence negating a material fact, thus demonstrating that the non-moving party will be unable to prove its case at trial.  Once the moving party satisfies its burden using this method, the non-moving party must respond with positive evidence sufficient to resist a motion for directed verdict at trial.

The second method by which the moving party who does not bear the burden of proof at trial can satisfy its initial burden on summary judgment is to <u>affirmatively</u> show the absence of any evidence in the record in support of a judgment for the non-moving party on the issue in question.  This method requires more than a simple

7

statement that the non-moving party cannot meet its burden at trial but does not require evidence negating the non-movant's claim; it simply requires the movant to point out to the court that there is an absence of evidence to support the non-moving party's case. *Fitzpatrick*, 2 F.3d at 1115-16. If the movant meets its initial burden by using this second method, the non-moving party may either point to evidence in the court record, overlooked or ignored by the movant, sufficient to withstand a directed verdict, or the non-moving party may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency. However, when responding, the non-movant can no longer rest on mere allegations, but must set forth evidence of specific facts. *Lewis v. Casey*, 518 U.S. 343 (1996) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).

<u>**Analysis**</u>

**Fontaine's delay of over three years in notifying EMC of the suit filed against him is unreasonable as a matter of law.**

Section IV (2)(b) of Fontaine's commercial general liability policy with EMC contains a notice provision which states that, "If a claim is made or a 'suit' is brought against any insured, you must see to it that we receive prompt written notice of the claim or 'suit.'" Fontaine had a duty to inform EMC of the underlying action within

8

the terms of the policy.

On or about May 14, 2001, Mike Fontaine was served, by a sheriff, with the underlying lawsuit.  EMC was notified of this suit on October 14, 2004, by Brian Collins, attorney for Linda Geiss.  Mike Fontaine did not notify EMC of the underlying lawsuit because he was "just kinda hoping it would go away."

Compliance with the notice requirements set forth in an insurance policy is a condition precedent to recovery.  Failure of the insured to comply with the requirements relieves the insurer of liability.  See *State Farm Fire & Cas. Co. v. Wiggins*, 972 F.Supp. 570, 573 (M.D. Ala. 1997); *Reeves v. State Farm Fire and Cas. Co.*, 539 So. 2d 252, 254 (Ala. 1989) ("Our cases have consistently held ... that the failure of an insured to comply within a reasonable time with such conditions precedent in an insurance policy requiring the insured to give notice of an accident or occurrence releases the insurer from obligations imposed by the insurance contract.").

The terms 'promptly' and 'as soon as practicable' have been construed by the Alabama Supreme Court to mean that notice must be given within a reasonable time in view of the facts and circumstances of the case.  *Reeves* at 255.  "In judging the reasonableness of the delay in giving notice to an insurer, there are only two factors to consider: [1] the length of delay and [2] the reasons for the delay."  *Aetna Ins. Co.*

*v. Spring Lake, Inc.*, 350 So. 2d 397, 400 (Ala. 1977)(citation omitted).  Where the

facts are undisputed, as in the present case, reasonableness of delay is a matter of law

for the court to decide.  See *Southern Guaranty Ins. Co. v. Thomas*, 334 So. 2d 879,

883 (Ala. 1976).  The burden is on the insured to "establish a compliance with the

provision respecting the giving of notice of an occurrence 'as soon as practicable,'

or in the alternative to show a valid reason for not giving such notice as soon as

practicable."  *Phoenix Assurance Co. v. Harry Harless Co.*, 303 F.Supp. 867, 868

(N.D. Ala. 1969), *aff'd*, 414 F.2d 794 (5th Cir. 1969).  Moreover, courts in Alabama

have long held that whether the insurer was prejudiced by the delay is immaterial to

the issue of timely notice.  See *American Fire & Cas. Co. v. Tankersley*, 270 Ala.

126, 130, 116 So. 2d 579, 582 (Ala. 1959); *Big Three Motors, Inc. v. Employers Ins.

Co.*, 449 So. 2d 1232, 1235 (Ala. 1984).

Under the factors articulated in *Spring Lake* that are to be considered by a court

in assessing the reasonableness of a delay in giving notice to an insurer, the court

notes that the elapsed time of three years from Fontaine being served with notice of

a suit against them and EMC being notified of the suit is extraordinary and beyond

the bounds of Alabama law.[4]  See *Acceptance Ins. Co. v. Schafner*, 651 F.Supp. 776

---

[4]Counsel for Geiss, not Fontaine, notified EMC of the underlying action.  In a sworn
statement attached to the motion for summary judgment as Exhibit 4, Fontaine indicates that he
did not intend to ever notify EMC of the suit against him.  For purposes of this memorandum

(N.D. Ala. 1986)(delay in notifying insurer of six months following notice of a lawsuit against insured warrants summary judgment against the insured under Alabama law); *Aetna Ins. Co. v. Spring Lake, Inc.*, 350 So.2d 397, 400 (Ala. 1977)("It is without doubt that a delay of over two years from the time of the accident to the time of notice is unreasonable, absent extenuating circumstances"); *Tankersley*, 270 Ala. at 129, 116 So. 2d at 580(holding that nine month delay from date of slip and fall accident and one month delay from date lawsuit was filed was unreasonable); and *Sears, Roebuck & Co. v. Southern Guaranty Ins. Co.*, 675 So. 2d 449, 451 (Ala. Civ. App. 1996)(finding that insurer was entitled to judgment as a matter of law on issue of late notice when insured attended a meeting with plaintiff's counsel who threatened to file a lawsuit and who waited eight months after the lawsuit was filed to notify the insurer).

Fontaine bears the burden of providing the court with a valid reason for this delay. *Phoenix Assurance Co.* at 868. Upon review of the evidence before the court on this motion for summary judgment[5], the court can only discern that Fontaine seeks

---

opinion, the court will focus solely on the merits of the timeliness of notice to EMC based on the law discussed herein rather than whether or not Fontaine, as the policy holder, notified EMC.

[5]As of the date of this memorandum opinion, Fontaine has not made an appearance or filed an answer in this action despite a record of having received the summons and an Order of Entry of Default (doc. 18) against them. The court has reviewed the record in an attempt to discover a possible excuse for Fontaine's failure to notify EMC of the underlying action and has found none.

to excuse the delay in notification because they were "just kinda hoping it [the underlying action] would go away." Under Alabama law, an insured's excuse for failure to notify their insurance company of a lawsuit filed against them because they were "still hoping to this point that all of this would just go away" and that he "had to wait and see what happened with it" is insufficient to excuse the failure to notify EMC as a matter of law. See *Sears, Roebuck & Co. v. Southern Guar. Ins. Co.,* 675 So.2d 449, 450 (Ala.Civ.App. 1996).

### **Conclusion**

In considering the undisputed facts of this case under Alabama law, Fontaine did not notify EMC within a reasonable period of time nor did Fontaine provide an adequate excuse for his delay. See *Aetna Ins. Co. v. Spring Lake, Inc.*, 350 So. 2d 397, 400 (Ala. 1977). Therefore, summary judgment is due to be **GRANTED** in favor of EMC. A separate order will be entered consistent with this memorandum opinion.

**DONE** and **ORDERED** this 2nd day of December, 2005.

**VIRGINIA EMERSON HOPKINS**
United States District Judge